## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## ASHLAND

**Civil Action No. 12-97-HRW**

**UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC,**                                           **PLAINTIFF,**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**APPALACHIAN REGIONAL
HEALTHCARE, INC.,**                                      **DEFENDANT.**

This matter is before the Court upon the parties' cross Motions for Summary Judgment [Docket Nos. 14 and 15]. The motions have been fully briefed by the parties [Docket Nos. 16, 17, 19 and 20] and for the reasons stated herein the Court finds that Plaintiff is entitled to judgment as a matter of law.

## I.    FACTUAL BACKGROUND

Defendant Appalachian Regional Healthcare, Inc. ("ARH") operates ten hospitals, multi-specialty physician practices, home health agencies, HomeCare Stores and retail pharmacies in Eastern Kentucky and Southern West Virginia. Plaintiff, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("Union") is the bargaining representative for certain employees at ARH's West Liberty, Kentucky, South Williamson, Kentucky, and Hinton, West Virginia hospitals.

### A.    The Collective Bargaining Agreement

The Union and ARH are parties to a collective bargaining agreement ("CBA") effective from April 25, 2007 through March 31, 2010 between the USW and Company governed the rates

of pay, hours of work and other conditions of employment during that period, with a successor Agreement effective April 1, 2010 through March 31, 2013. A copy of the CBA is attached to the Complaint [Docket No. 1-1]. Article 33 of the CBA sets forth the four-step procedure by which disputes arising the CBA are addressed [Docket No. 1-1, pp. 73-80]. If a grievance is not resolved by the fourth step, it may be referred to arbitration and the CBA sets forth in detail the process by which an arbitrator is selected and so forth.

[Docket no. 1-1, p. 74].

With regard to grievances which are settled prior to arbitration, the CBA provides: "Grievances settled at Step 3 shall have local bargaining unit precedent value only, while grievances settled as a result of a Step 4 hearing shall have precedent value for all bargaining units covered under this master agreement." [Docket No. 1-1, p. 76]. With regard to resolution by arbitration, the CBA states, "[t]he award of the arbitrator shall be final, conclusive and binding upon ARH, the Union, and the Employee(s)." [Docket No. 1-1, p. 77].

## B. Grievances Arising from The Reduction in Hours

Article 15(A) of the CBA mandates that the "basic work week for said Employees shall be forty (40) hours per week." [Docket No. 1-1, p. 36]. Sometime in 2009, ARH reduced the number of hours in a basic work week for certain employees to an average of thirty-seven and one-half (37 ½) hours. [Affidavit of Randy Pidcock, Docket No. 14-2, ¶ 5]. In response to the reduction in hours, the local Unions under the CBA filed five grievances, on behalf of employees at four of ARH's hospitals.

For the employees at the Beckley ARH facility, Local Union 14310 filed a written grievance on September 11, 2009, regarding the unilateral reduction of hours ("Beckley

2

grievance"). [Docket No. 15-2].

For the employees at the Morgan County facility, Local Union 9148 filed a written grievance on June 14, 2009, regarding the unilateral reduction of hours, alleging breach of the Agreement, citing CBA Article 14 and "all other Articles that may apply." [Docket No. 14-3].

For the employees at the Summers County facility, Local Union 14310-01 filed two written grievances on or January 5, 2011 and January 25, 2011, regarding the unilateral reduction of hours, alleging breach of the Agreement, citing CBA Articles 14 and 15 and "any other Articles violated". [Docket No. 14-5 and 6]. For the employees at the South Williamson ARH facility, Local Union 14398 filed a written grievance on March 10, 2011, regarding the unilateral reduction of hours, alleging breach of the Agreement, citing CBA Articles 13, 14 and 15 and "any other article that may apply." [Docket No. 14-6].

## C. The Beckley Grievance

The parties processed the Beckley grievance to arbitration on April 13, 2012 The grievance was denied by Arbitrator John Remington on August 17, 2012. His ruling reads, in pertinent part:

> A careful reading of Articles 14 and 15 together makes it abundantly clear that the Company has retained the contractual right to reduce work hours for economic or other business related reasons, without allowing affected senior employees to bump junior employees, even if this reduction results in certain employees being scheduled to work less than eight hours per day or forty hours per week, and so the Arbitrator finds. . . . Despite the Union's urging to the contrary, he must find that the language of Article 14 is neither ambiguous nor unclear but rather that it clearly authorizes the staffing adjustment strategy imposed by the Company in 2009 which gave rise to the instant grievance.

[Docket No. 10-1, pp. 12-13].

3

**D.     Union seeks to arbitrate the remaining grievances.**

While the Beckley grievance was pending, the four aforementioned grievances were held in abeyance by mutual agreement between the Union and the Company, as allowed in Article 33 of the Agreement.   The four grievances were processed through the "Step 4" grievance meetings prior to being held in abeyance, pending the outcome of the Beckley arbitration.

Following the arbitrator's decision in the Beckley grievance, By letter dated August 28, 2012, Randy Pidcock, Union Representative, notified ARH through Ron Lester, ARH Employee and Labor Relations Director,  that the Union wished to remove the remaining four grievances from "on hold" status and  proceed with their arbitration. [Docket No. 1-6].

In reply to Mr. Pidcock's letter,  Lester stated in a letter dated August 31, 2012, that the Company refused to arbitrate any of the four grievances on the grounds that the parties had agreed to abide by the ruling in the Beckley case. [Docket No. 15-3].

This lawsuit ensued.  In its Complaint, the Union asks this Court to compel ARH to arbitrate the four pending grievances.  It  argues that it is not for this Court to determine the preclusive effect, if any, of the Beckley grievance upon the pending grievances.  Rather, it points out that this Court's function is limited to ascertaining "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics Inc.,* 505 F.3d 417, 419-20 (6th Cir. 2007). It contends that the pending grievances come well within the purview of the CBA and, thus, this

4

Court should compel ARH to arbitrate. ARH, on the other hand, maintains that under the doctrine of collateral estoppel, Plaintiff cannot re-litigate the claims addressed in the decision in the Beckley grievance. Both parties

 seek summary judgment.

## II.    STANDARD OF REVIEW

A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits "show [ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). There is no genuine issue for trial where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We must ultimately decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party. *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 332 (6th Cir.2008).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

5

## III. ANALYSIS

The sanctity of Arbitrator Remington's decision is not at issue before this Court . Neither party questions the enforceability of his ruling or contends he acted beyond his authority or undue influence. Rather, it is the effect of his ruling in the Beckley grievance that is at the heart of the matter.

The Union argues that the CBA mandates that the four grievances which were, in effect, stayed pending the Beckley arbitration and have proceeded through Step 4 of the procedure set forth in the CBA, be arbitrated. It emphasizes that the parties did not agree to consolidate the aforementioned grievances, nor was there an agreement to be bound by the Beckley grievance. That the Beckley grievance would resolve the others was not contemplated. The Union points out that while the grievances pertain to the unilateral reduction of hours, they involve different employees at different hospitals from different bargaining units with the Union. Indeed, at the hearing before Arbitrator Remington in the Beckley grievance, ARH's counsel made these statements, as reflected in the transcript of the proceedings:

> We are arbitrating one grievance, and that is Joint Exhibit 2 [the Beckley grievance]. It refers to one discreet set of facts. We aren't arbitrating anything else. There is nothing else involved in this case. There is nothing else that has been presented to the Arbitrator for a decision in this case, this grievance and this grievance alone.
> Whatever application it may have elsewhere, it's for the parties at some point in the future to decide whether it has any implication or no implication at all. But there is no grievance before you today other than [the Beckley grievance].
> ...
> **But nothing in this case, as far as I am concerned, has any implication for any other pending grievance.** Nothing was made contingent upon this grievance. We have to arbitrate this grievance and this grievance alone. Anything else outside of that is irrelevant and extraneous and not the position of the hospital.

[Docket No. 14-8, pp. 31and 41] (emphasis added).

6

Given ARH's statements, the Union suggests it is, at best, disingenuous for ARH to proclaim that the Beckley grievance governs the other grievances.

In addition, the CBA itself speaks to the limited circumstance in which a grievance may be imbued with the power of precedent, to-wit, a settlement at Step 4. [Docket No. 1-1, p. 76]. This is prior to arbitration. Under the CBA, an arbitrator is not even selected until after settlement efforts fail at Step 4. The CBA plainly conveys that, if the parties proceed to arbitration, the arbitrator's decision is not binding on subsequent grievances. Here, it is undisputed that the Beckley grievance was not settled. Therefore, under the express terms of the CBA, its resolution has no precedential weight.

ARH argues that collateral estoppel prevents the Union from re-litigating the issue in the Beckley grievance. Collateral estoppel "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009). The elements for collateral estoppel are: (1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; (4) a prior losing litigant. *Price v. Yellow Cab Co. of Louisville*, 365 S.W.3d 588, 591-92 (Ky. 2012); *see also United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). At first blush ARH's argument seems sound. The reduction of hours is the issue in the grievances. The union is a "prior losing litigant" having lost the Beckley grievance arbitration between it and ARH, and the Award of Arbitrator Remington dated August 17, 2012, is a "final decision or judgment on the merits." The hearing provided a "full and fair opportunity to litigate," as both parties were represented by counsel and heard at length on the issues.

7

However, ARH's argument ignores the context in which this lawsuit arose - arbitration. The Sixth Circuit has stated "'the best approach is to refrain, as a general rule, from requiring an arbitrator to give res judicata, collateral estoppel, or other preclusive effect to decisions in earlier arbitrations..'" *Int'l Union UAW v. Dana Corp.*, 278 F.3d 548, 556 (6th Cir. 2002) (emphasis added). In the opinion, Judge Moore continues:

> the majority of other circuits that have examined this issue have held **that arbitrators in labor disputes are not bound by the decisions of prior arbitrators unless the collective bargaining agreement so stipulates**. The Supreme Court has stated that "because the authority of arbitrators is a subject of collective bargaining, . . . the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.

*Id.* (emphasis added)(internal citations omitted).

Recognizing that the collateral estoppel effect of a prior arbitration is unsettled among the circuits, the Court confirmed:

> We adopt the reasoning of the majority of other circuits to have examined this issue and hold that absent a contractual provision to the contrary, **the preclusive effect of an earlier arbitration award is to be determined by the arbitrator.**

*Id.* at 557(emphasis added).

ARH attempts to escape the reach of *Dana Corp.* It maintains that it is "not advocating that an earlier arbitration award has preclusive effect on a grievance currently before an arbitrator. Rather, it is the position of ARH that a single award, that of Arbitrator Remington, is binding on each ARH facility." [Docket No. 17, p. 6]. It states that as the alleged violating of the CBA was the same at each facility, the ruling as to one facility is concurrent as to all facilities.

This backdoor approach will not diminish the ruling in *Dana Corp.* Short of an

8

agreement between the parties that the Beckley award has a preclusive effect or even a showing of such an intention, ARH cannot plausibly support its argument. Moreover, during the hearing, ARH's counsel stated again and again that "nothing in this case, as far as I am concerned, has any implication for any other pending grievance." Nothing was said at the arbitration with regard to the Beckley grievance being dispositive. Such a statement would have put all interested parties on notice and this lawsuit would never have been filed.

This is not to say that there is no logic to ARH's position. However, issue preclusion is not a foregone conclusion in this context. As discussed herein, that is for the arbitrator to determine.

## IV. CONCLUSION

The Court finds that the grievances invoke the CBA and must be addressed pursuant to the procedure set forth therein. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 14] be **SUSTAINED** and Defendant's Motion for Summary Judgment [Docket No. 15] be **OVERRULED**. **IT IS FURTHER ORDERED** that Defendant arbitrate, without delay, the four grievances at issue in this matter (appended to the Complaint as Docket Numbers 1-2, 1-3, 1-4 and 1-5). A Judgment will be entered contemporaneously herewith.

This 15th day of January, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge

9